**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


ANTHONY DUPREE, JR.,                )
                                    )
                 Plaintiff,         )
                                    )
        v.                          )        1:12CV345
                                    )
CITY OF LEXINGTON POLICE DEPT.,     )
et al.,                             )
                                    )
                 Defendants.        )


**MEMORANDUM OPINION, ORDER AND
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on Plaintiff's Application for Leave to Proceed In Forma Pauperis (Docket Entry 1), filed with Plaintiff's pro se form Complaint (Docket Entry 2). The Court will grant Plaintiff's request to proceed as a pauper for the limited purpose of recommending dismissal of this action, under 28 U.S.C. § 1915(e)(2), as frivolous, for failing to state a claim, and/or due to the immunity of a defendant.

LEGAL BACKGROUND

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342 (1948)). "Dispensing with filing fees,

however, [is] not without its problems.  Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants.  In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit."  <u>Nagy v. Federal Med. Ctr. Butner</u>, 376 F.3d 252, 255 (4th Cir. 2004).  To address this concern, the <u>in</u> <u>forma</u> <u>pauperis</u> statute provides that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

As to the first of these grounds for dismissal, the United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).  In assessing such matters, this Court may "apply common sense." <u>Nasim</u>, 64 F.3d at 954; <u>see also</u> <u>Nagy</u>, 376 F.3d at 256-57 ("The word 'frivolous' is inherently elastic and not susceptible to categorical definition.  . . .  The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." (some internal quotation marks omitted)).

Alternatively, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(e)(2)(b)(ii), when the complaint does not "contain sufficient <u>factual matter</u>, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Id.</u>[1]

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read <u>Erickson</u> to undermine <u>Twombly</u>'s requirement that a pleading contain more than labels and conclusions," <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); <u>accord</u> <u>Atherton v. District of Columbia Off. of Mayor</u>, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting <u>Erickson</u>, 551 U.S. at 94, and <u>Iqbal</u>, 556 U.S. at 679, respectively)).

The third ground for dismissal under 28 U.S.C. § 1915(e)(2)(B) generally applies when doctrines established by the United States Constitution or at common law immunize governments and/or government personnel from damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state officials under Eleventh Amendment); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines, such as judicial, legislative, and prosecutorial immunity).

DISCUSSION

At various points, Plaintiff's Complaint names as Defendants:

1) the "City of Lexington Police Dept." and three of its officers ("Officer Matthew White," "Officer Fritz," and "Officer English") (Docket Entry 6 at 1-3, 5, 6, 23, 24);

2) "Calicutt Realty, Inc." (id. at 1, 2, 6, 23);

3) the "Davidson County Magistrate Office" (id. at 6);

4) the "City of Lexington Sheriff Dept." (id. at 1, 2, 5, 23);

5) "Carrol C. Wall, Attorney" (id. at 1, 2, 6, 23);

6) various media entities (id. at 1, 2, 5, 6, 23); and

7) the "City of Lexington Sanitation Dept." and a supervisor in that Department ("Jeff Everhart") (id. at 1, 2, 5, 23).

Under the heading "STATEMENT OF CLAIM," the type-written instructions on the form Complaint direct: "State here as briefly as possible the FACTS of your case. Do this by identifying the

4

alleged legal wrong and by describing how each defendant . . . is
personally responsible for depriving you of your rights.  Include
relevant times, dates, and places." (<u>Id.</u> at 4.)

In the space beneath that admonition, the Complaint makes
references to 42 U.S.C. §§ 1983 and 1985, as well as the United
States Constitution, and appears to identify "the alleged legal
wrongs" committed by Defendants as "rational basis test[,]
suppression of due process, deprivation [sic] of character,
slander, libel, harrassment [sic], [and] inflicting mental and
spiritual injury upon a sick person." (<u>Id.</u>)[2]  It then states:

> It is obvious that the officials and their networking
> sources shuns [sic] the idea of fairness, sympathy and
> empathy in administering the sacred laws of the land,
> principles and laws that many of my military comrades &
> I have fought and given their [sic] lives to protect and
> defend.
>
> The City of Lexington and their officials has [sic] made
> it apparent, that their interest is not the fulfillment
> of justice, but to continue to stall and delay and
> postpone until they can devise other malicious and wicked
> lies and schemes in which they purport to the various
> vehicles of the media without any evidence and conviction
> whatsoever.
>
> They have violated every area of our court's [sic]
> standards and procedures – using their court appointed
> attorneys as Judas Goats.
>
> Therefore it is impossible to receive a fair and
> impartial trial.  One in which they know all too well has
> trump [sic] up and fabricated by false arrest and

_____

[2] The hand-written portions of the Complaint do not take a
consistent approach to capitalization.  (<u>See</u> Docket Entry 2 at 1-
25.)  In quoting the Complaint, this Memorandum Opinion utilizes
standard capitalization conventions for ease of reading.

harassment by their law-enforcement officials because of [Plaintiff's] political, socio-economic and cry of injustice toward the home-less.

I seek removal because of these blatant facts.

For a list of tort-feasors[,] please see attached.

(Id. at 4, 22.)[3]

The Complaint's above-quoted, generalized assertions of wrong-doing do not suffice to state a claim against any named Defendant under the previously-described standard set by Twombly and Iqbal.[4] Nor, as the analysis that follows shows, do the additional allegations offered by Plaintiff in his attached "list of tort-feasors" set forth adequate factual matter to sustain any of the purported cause(s) of action as to any named Defendant.

<u>"City of Lexington Police Dept."/Officers White, Fritz, and English</u>

As to the "City of Lexington Police Dept." and its three named officer-Defendants, the attachments to the Complaint allege:

1) "[t]his Department holds the responsibility as to how their employees should conduct themselves" (Docket Entry 2 at 7);

_____

[3] In the docketed version of the Complaint, Plaintiff's attached "list of tort-feasors" (as well as other attachments) appear between the two pages of the form Complaint dedicated to the "STATEMENT OF CLAIM" (see Docket Entry 6 at 4-22) and thus the above-quoted language falls on non-consecutive pages.

[4] To the extent Plaintiff seeks to remove any state criminal case(s) to federal court, the allegations of his Complaint do not support such action. See North Carolina v. Peggs, No. 1:11CR331, 2012 WL 1392353, at *2-3 (M.D.N.C. Apr. 23, 2012) (unpublished) (discussing limited federal statutory authority for such removals).

2) "Lexington Police Dept. has made news over a period of years about their harsh, cruel and sadistic way in which they handle their constituents" (id.);

3) "[t]he Dept. was well aware that their officers, Fritz and White[,] were harassing [Plaintiff] about [his] dogs on a continuous basis starting from 9/11 when the city ordinances about animals was [sic] passed up to December 2011 . . . [by] writing false citations and arresting [Plaintiff] at will [and] never Mirandiz[ing] [Plaintiff] on any of these occasions" (id.);

4) the citations written by Officer White for "violation[s] like, no water, no food or no shelter . . . [were false because] he always seem [sic] to show up when [Plaintiff's] dogs had finish [sic] feeding[,] . . . [because, Plaintiff] kept [his] dogs in the house most of the time, but when [Plaintiff] would let them out to relieve themselves, [Officer White] would ask and state that the dogs had no shelter – then write an offense for it . . . [and because] when [Plaintiff's] dog would get off the chain, it would be because kids in the neighborhood would throw rocks & bottles at them [sic] when [Plaintiff] would be on [sic] a doctor's appointment or on domestic errands" (id. at 7-8);[5]

5) "[Officer] White kept up his surveillance and harassment . . . by sending others [sic] officers, his subordinates, mainly

---

[5] The Complaint further alleges that "[t]here are pictures . . . showing the excellent health of [Plaintiff's] dogs" and "[the bottles and rocks] in [his] yard." (Docket Entry 2 at 8.)

[Officer] Fritz, to nic-pic [sic] about some violation – water bucket turned over, no food in bowl, dog chain too short [or] too long – a number of ridiculous things" (id. at 8);

6) "[Officer] White, when informed by other officers that [Plaintiff's] Rottweilers had died . . ., broke into [Plaintiff's] house, took [Plaintiff's] other dog . . . and let [sic] a search warrant giving [Officer White] the right to take [Plaintiff's] animals . . . because [Officer White] felt [Plaintiff's] dog was left to starve" (id. at 9);[6]

7) "around 1/13/2012," Officer English arrested Plaintiff at his home and, when Plaintiff "asked for the privilege of seeing the warrant, [Officer English] stated that it was down at the police station" (id. at 9-10);

8) at the police station, Officer English "made the bond $5,000.00 secured after which [Officer] White can [sic] in trying to make [Plaintiff] sign papers giving [his] dog to the Police Department and the Human [sic] Society" (id. at 10); and

9) when Plaintiff "told Officer White that he knows these actions don't make any sense, [Officer White] stated 'If I were you, I'd leave town'" (id. at 11).

_____

[6] The Complaint notes that, with the search warrant, Officer White "left a long drawn out letter as to him checking with the utility department, that he's checked and little utility was being used, so [Plaintiff] must have abandoned the place." (Docket Entry 2 at 9.) According to the Complaint, Plaintiff had low utility usage because he "was leaving early in the morning for job searches." (Id.)

8

As to Officer English, the Complaint thus alleges only that he arrested Plaintiff without physical possession of an arrest warrant and requested a $5,000.00 secured bond for Plaintiff. Such allegations, even if accepted as true, fail to state a claim for any constitutional violation (potentially actionable via 42 U.S.C. § 1983), including the Fourteenth Amendment's mandates that governments (and government officials) provide due process of law and possess a rational basis for differential treatment of similarly-situated individuals. See <u>Dawkins v. Richmond Cnty. Sch.</u>, No. 1:12CV414, 2012 WL 1580455, at *4 (M.D.N.C. May 4, 2012) (unpublished) (outlining standard for Fourteenth Amendment Equal Protection Clause-based claims as to matters other than race, national origin, alienage, sex, and illegitimacy);[7] <u>North Carolina v. McKenna</u>, 289 N.C. 668, 678-79, 224 S.E.2d 537, 545 ("The usual practice, and the better practice in our view, is to serve [a] defendant promptly with the arrest warrant. . . . Such service, however, is not a constitutional requirement of due process."), <u>vacated in part on other grounds</u>, 429 U.S. 912 (1976); <u>Moore v. Evans</u>, 124 N.C. App. 35, 50-51, 476 S.E.2d 415, 426 (1996) ("[I]n

_____

[7] Notably, as to any "rational-basis" claim, the Complaint does not assert (even generally much less with supporting factual allegations) that Officer English's failure to serve Plaintiff with a warrant upon arrest represented differential treatment from that received by other similarly-situated arrestees or that Officer English requested a higher bond for Plaintiff than for other similarly-situated arrestees.

the light most favorable to [the plaintiff], the evidence tends to show that [the defendant-officer] requested the magistrate to set [the plaintiff's] bond high . . . . However, it is the magistrate, and not [the defendant-officer], who is responsible for setting [the plaintiff's] bail; therefore, this contention [that the defendant-officer's request for a high bail violated the United States Constitution] is without merit.").

Nor, if credited, would such factual allegations show that Officer English contravened 42 U.S.C. § 1985. See Clark v. Russell, No. 1:11CV526, 2012 WL 601868, at *4 (M.D.N.C. Feb. 23, 2012) (unpublished) ("Section 1985(1) relates to interference in the performance of a plaintiff's official duties. . . . Section 1985(2) addresses acts involving either force, intimidation, or threat to obstruct justice or obstruction of justice aimed at undermining equal protection of the law . . . . Section 1985(3) requires proof of some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." (internal quotation marks omitted)). The factual matter in the Complaint regarding Officer English similarly fails to provide a viable claim that he committed any recognized defamation/emotional distress-related state tort. See Hugger v. Rutherford Inst., 63 Fed. Appx. 683, 690 (4th Cir. 2003) (ruling that, under North Carolina law, emotional distress torts require showing of "severe emotional distress," i.e., something "no reasonable man could be

expected to endure");[8] <u>Tyson v. L'eggs Prods., Inc.</u>, 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987) ("In order to recover for defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation."); <u>see also</u> <u>McLean v. Patten Communities, Inc.</u>, 332 F.3d 714, 719 (4th Cir. 2003) (stating that "harassment" does not constitute a "common law tort[] in North Carolina").

*Officers White and Fritz*

The contention that Officers White and Fritz wrote citations Plaintiff considers unjustified (due to various explanations he has for any cited lack of food, water, shelter, or proper restraint for his dogs) similarly fails to state a viable constitutionally-based cause of action. First, "[t]he Supreme Court has rejected the proposition that a defendant possesses a liberty interest [protected by the Due Process Clause] in avoiding prosecution upon less than probable cause. And, the Fourth Amendment provides all of the pretrial process that is constitutionally due to a criminal defendant . . . ." <u>Brooks v. City of Winston-Salem, N.C.</u>, 85 F.3d 178, 184 (4th Cir. 1996) (internal citation omitted).

---

[8] The Complaint does not allege any emotional distress caused by Officer English (<u>see</u> Docket Entry 2 at 10-11) and, more generally, only identifies alleged harm to Plaintiff's mental health from all events in the Complaint in a conclusory fashion that falls far short of satisfying the severity element of an emotional distress claim under North Carolina law (<u>see</u> <u>id.</u> at 25).

In addition, the Complaint fails to allege factual matter showing that the citations at issue "w[ere] not supported by probable cause and that the criminal proceedings terminated in [Plaintiff's] favor [so as] sufficient[ly] to state a § 1983 malicious prosecution claim alleging a seizure that was violative of the Fourth Amendment." Id. at 183-84; see also Sennett v. United States, 667 F.3d 531, 536 (4th Cir. 2012) ("The test [for probable cause] is not whether the conduct under question is consistent with innocent behavior; law enforcement officers do not have to rule out the possibility of innocent behavior." (internal quotation marks omitted)).[9] Nor does the Complaint assert that Officers White and Fritz declined to write citations for others similarly-situated to Plaintiff, as required to state a claim under the Equal Protection Clause. See Dawkins, 2012 WL 1580455, at *4.

---

[9] The Complaint also lacks any allegation that Officers White and Fritz ever questioned Plaintiff upon arrest (much less that he gave answers later used against him in a criminal case), such that any lack of Miranda warnings affords no basis for a constitutional claim. See Reaves v. Richardson, C/A No. 4:09-820-TLW-SVH, 2011 WL 2119318, at *3 (D.S.C. Mar. 1, 2011) (unpublished) ("Plaintiff's allegations fail to set forth a claim because: (1) Plaintiff made no self-incriminating statements which were used against him in a criminal case; and (2) the mere alleged violation of Miranda cannot support a § 1983 claim." (citing Chavez v. Martinez, 538 U.S. 760, 770 (2003) (plurality), and Burrell v. Virginia, 395 F.3d 508, 513-14 (4th Cir. 2005))), recommendation adopted, 2011 WL 2112100 (D.S.C. May 27, 2011) (unpublished); Ervin v. Hammond, No. 3:05CV59-MKR-DCK, 2007 WL 5060411, at *11 (W.D.N.C. Dec. 12, 2007) (unpublished) ("[P]olice officers' questioning of a plaintiff in custody without providing Miranda warnings will provide a basis for a § 1983 claim, if at all, only where the plaintiff's statements were used against him in the criminal proceeding." (citing Chavez and Renda v. King, 347 F.3d 550, 557 (3d Cir. 2003))).

So too, Plaintiff's attempt to convert Officer White's execution of a search warrant into a constitutional tort falls short as a matter of law, given that the Complaint alleges neither that the warrant application lacked probable cause and/or contained intentional/reckless falsehoods nor that Officer White engaged in differential treatment of similarly-situated individuals. See Malley v. Briggs, 475 U.S. 335, 343-45 & n.6 (1986) (making clear that Fourth Amendment standards apply to Section 1983 claims as to search warrants); Franks v. Delaware, 438 U.S. 154, 165 (1978) ("[Pursuant to the Fourth Amendment, a] warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause . . . . Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand beyond impeachment." (internal citations omitted));[10] Dawkins, 2012 WL 1580455, at *4.

Further, Officer White's alleged effort to "make" Plaintiff "sign over" his dog and Officer White's supposed suggestion that Plaintiff consider "leav[ing] town" create no constitutionally-based cause of action. As to the former, the Complaint does not

---

[10] At most, the Complaint offers alternative explanations for some evidence apparently submitted in the warrant application. Such attempted parrying of an officer's showing does not establish a lack of probable cause. See Sennett, 667 F.3d at 536.

describe what Officer White did (such that it lacks sufficient "factual matter" to state a claim under <u>Iqbal</u> and <u>Twombly</u>)[11] and, as to the latter, Officer White's reported remarks would violate standards of professionalism, but not the Constitution, <u>see, e.g.</u>, <u>Bender v. Brumley</u>, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("As a rule, mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation." (internal brackets and quotation marks omitted)); <u>Crenshaw v. City of Defuniak Springs</u>, 891 F. Supp. 1548, 1555 (N.D. Fla. 1995) ("[C]itizens do not have a constitutional right to courteous treatment by the police. . . . [V]erbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under Section 1983." (internal quotation marks omitted)); <u>Jermosen v. Coughlin</u>, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.").

---

[11] To the extent the Complaint elsewhere implies that Officer White made a "threat about keeping [Plaintiff] indefinitely if [he] didn't sign [his] dog over" (Docket Entry 2 at 15 (setting out comments Plaintiff allegedly made to state judge in section of Complaint addressing purported liability of "City of Lexington's Sheriff Department")), the Court declines to construe the Complaint as asserting such an allegation against Officer White in light of the above-quoted, conflicting allegations in the portion of the Complaint specifically targeted at the "City of Lexington Police Dept." and Officers White, Fritz, and English that: (1) Officer English submitted a bond recommendation; and (2) Officer White indicated Plaintiff should leave town.

Further, the Complaint lacks the requisite allegations of interference in Plaintiff's performance of official duties, obstruction of justice aimed at frustration of equal protection rights, or racial or other class-based discrimination needed to sustain a Section 1985 claim against Officers White and Fritz. <u>See</u> <u>Clark</u>, 2012 WL 601868, at *4. Finally, the recognizable state tort claims identified in the Complaint do not lie against Officers White and Fritz given the absence of any factual allegation showing that they made false defamatory statements about Plaintiff or otherwise intentionally or negligently caused Plaintiff severe emotional distress. <u>See</u> <u>Hugger</u>, 63 Fed. Appx. at 690; <u>Tyson</u>, 84 N.C. App. at 10-11, 351 S.E.2d at 840.

*"City of Lexington Police Dept."*

Given that the Complaint fails to state a cognizable claim against Officers White, Fritz, and English, Plaintiff has no claim against the "City of Lexington Police Dept." (or, for that matter, the City of Lexington)[12] based on the notion that "[t]his Department holds the responsibility as to how their employees should conduct themselves" (Docket Entry 2 at 7). Moreover, Section 1983 does not permit such respondeat superior liability, <u>see</u> <u>Love-Lane v. Martin</u>,

_____

[12] It appears that, as a mere component of a municipality, a municipal police department lacks the capacity to sue or be sued. <u>See</u> <u>Fields v. Tucker</u>, No. 1:10CV844, 2011 WL 4345306, at *1 n.1 (M.D.N.C. Sept. 15, 2011) (unpublished), <u>recommendation adopted in relevant part</u>, 2012 WL 174820, at *1-2 (M.D.N.C. Jan. 20, 2012) (unpublished).

355 F.3d 766, 783 (4th Cir. 2004) (citing <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 691 (1978)), and, in fact, a plaintiff must offer more than conclusory allegations of prior unspecified misconduct by municipal officials to show the existence of a policy or custom, as well as the proximate causation therefrom, required to state a Section 1983 claim against a municipality, <u>see</u> <u>Revene v. Charles Cnty. Comm'rs</u>, 882 F.2d 870, 875 (4th Cir. 1989).

### "Calicutt Realty, Inc."

According to the attached pages of the Complaint, "Calicutt Realty, Inc." (a business operated by Bob Calicutt from which Plaintiff rented a house) "is primarily responsible and is a primary component for orchestrating the harassment and vicious attacks [on Plaintiff] by the law enforcement agencies in Lexington." (Docket Entry 2 at 18.) More specifically, the Complaint asserts that, due to Plaintiff's complaints about the condition of his rental property, "when Calicutt would see [Plaintiff] leave the premises, he would call the officials to conjure up some bogus infractions." (<u>Id.</u> at 18-19.) Because (for reasons discussed in the preceding subsections) the Complaint lacks sufficient factual allegations to support any cause of action against the "City of Lexington Police Dept." and Officers White, Fritz, and English, any attempt to proceed against "Calicutt Realty, Inc." (or, for that matter, Bob Calicutt) based on some theory of joint liability similarly must fail.

16

## "Davidson County Magistrate Office"

Within its attachments, the Complaint alleges that Plaintiff "[is] totally appalled at the way that the Office of Magistrate operates in Davidson County." (Docket Entry 2 at 20.) More specifically, the Complaint offers these factual assertions:

1) when Plaintiff came "before these magistrates, the police d[id] all the talking, [he was] in handcuffs [and] the police ha[d] the summons typed up from upstairs by a form that ha[d] the magistrate [sic] name already type [sic] in" (<u>id.</u>);

2) often the name of the magistrate on the summons differed from the actual magistrate before whom Plaintiff appeared (<u>id.</u>);

3) in some instances, "magistrates . . . never inquired of [Plaintiff whether he] underst[oo]d the allegation" (<u>id.</u>);

4) magistrates "automatically take the word of these [police] officers, totally ignoring [Plaintiff's] presence" (<u>id.</u>); and

5) Plaintiff "never had an opportunity to understand or refute any allegations . . . [but instead was] [j]ust released if unsecured bond [wa]s granted, or jailed if [a] secured [bond was ordered] and [Plaintiff was] unable to make bond" (<u>id.</u> at 21).

Plaintiff cannot pursue in this action any claim against the "Davidson County Magistrate Office" based on these allegations. First, it does not appear that the "Davidson County Magistrate Office" constitutes a proper party to a federal lawsuit. <u>See</u> <u>Mack v. Fox</u>, No. 1:07CV760, 2008 WL 4832995, at *6 n.4 (M.D.N.C. Nov. 4,

2008) (unpublished) (stating that "the 'Orange County Magistrate's Office' does not appear to be an entity capable of being sued under North Carolina law" and citing Fed. R. Civ. P. 17(b) and <u>Avery v. Burke</u>, 660 F.2d 111, 113-14 (4th Cir. 1981), for proposition that state law determines an entity's amenability to federal litigation), <u>recommendation adopted</u>, 2008 WL 7674789 (M.D.N.C. Dec. 10, 2008), <u>aff'd</u>, 326 Fed. Appx. 251 (4th Cir. 2009). Second, any such claim does not share common questions of law or fact with the above-discussed claims against the "City of Lexington Police Dept." and Officers White, Fritz, and English. <u>See</u> Fed. R. Civ. P. 20(a)(2)(B) (requiring common issues of law or fact for joinder of defendants), 21 (authorizing courts to sua sponte "drop a party" to address misjoinder). Third, "magistrates are entitled to absolute immunity for acts performed in their judicial capacity." <u>Pressly v. Gregory</u>, 831 F.2d 514, 517 (4th Cir. 1987); <u>accord</u> <u>Mack</u>, 2008 WL 4832995, at *5 n.2 ("Judicial immunity includes immunity from damages as well as prospective injunctive relief.").

<u>"City of Lexington Sheriff Dept."</u>

The Complaint, in its attached pages, alleges that, following Plaintiff's arrest in January 2012, "[t]he Sheriff Department conjured up fictitious lies about [Plaintiff] being wanted in 5 or 6 states which delayed [his] bondsman from posting bail." (Docket Entry 2 at 14.) It elaborates, in relevant part, only as follows:

> [Plaintiff's bondsman] was going to post [Plaintiff's] bail on Friday [i.e., the day after his arrest], but was

18

> told by the Sheriff Department that there was a hold on
> [Plaintiff] by 5 or 6 states, so [Plaintiff] had to wait
> over the weekend to go before the judge . . . . The next
> day which was the 16th January 2012, Tuesday,
> [Plaintiff's] lawyer, Carroll C. Walls came to see
> [Plaintiff] with the same papers [regarding surrender of
> his dog] that [Plaintiff] refused to sign for [Officer]
> White. That same day [Plaintiff's] bond was reduced from
> $5,000.00 secured, to $1000.00. [Plaintiff] was finally
> released on January 21, 2012, Saturday.

(Id. at 14-15.) According to the Complaint, "[t]hat's 7 days that [Plaintiff] was kidnapped by the Sheriff Department." (Id. at 15.) The Court thus construes this portion of the Complaint as asserting a Section 1983 claim for unconstitutional seizure.

In assessing this claim, the Court initially notes that it does not appear an entity called the "City of Lexington Sheriff Dept." exists. "[I]n North Carolina, counties and cities constitute separate political subdivisions . . . ." Hall El v. Craven, No. 1:12CV246, 2012 WL 1067627, at *6 n.6 (M.D.N.C. Mar. 30, 2012) (unpublished) (internal parentheticals omitted). Moreover, North Carolina law provides that "[i]n each county a sheriff shall be elected by the qualified voters thereof . . . and shall hold his office for four years." N.C. Gen. Stat. § 162-1 (emphasis added). By statute, "[t]he sheriff shall have the care and custody of the jail in his county; and shall be, or appoint, the keeper thereof." N.C. Gen. Stat. § 162-22 (emphasis added).

Because "the City of Lexington [is] the county seat of Davidson County," Lambeth v. Board of Comm'rs of Davidson Cnty., N.C., 407 F.3d 266, 267 (4th Cir. 2005), it seems likely that the

Complaint actually seeks to lodge the instant claim against the governmental entity that operates the jail facility in Davidson County. Under North Carolina law (as noted), the Sheriff of Davidson County has responsibility for the jail facility in Davidson County. However, "[s]ome uncertainty exists as to the proper nomenclature for the local governmental entity associated with North Carolina sheriffs and their personnel and as to the capacity of any such entity to be sued." McNeil v. Guilford Cnty. Sheriff Dep't, No. 1:09CV999, 2010 WL 377000, at *3 n.3 (M.D.N.C. Jan. 25, 2010) (unpublished) (citing cases taking apparently conflicting positions as to whether various "sheriff"-related entities constitute proper parties).

To the extent Plaintiff purports to sue the "City of Lexington Sheriff Dept." under Section 1983 for unconstitutional seizure for actions that delayed his release on bond, "[b]ecause Plaintiff has failed to allege that any entity or policy-maker [affiliated with the Sheriff of Davidson County] maintained any policy or custom that caused Plaintiff's claimed injury, the Court need not attempt to conclusively determine the identity and/or capacity to be sued of the entity that Plaintiff expressly or by implication has named or that he might have named instead." Id.; see also Walker v. Prince George's Cnty., Md., 575 F.3d 426, 431 (4th Cir. 2009) (affirming dismissal of Section 1983 claim against local government where plaintiffs failed to identify "policy, or custom that caused

their injury" (internal brackets and quotation marks omitted));

Love-Lane, 355 F.3d at 782 ("To hold a [local government] liable for a single decision (or violation), the decisionmaker must possess 'final authority to establish [governmental] policy with respect to the action ordered.'" (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986))).[13]

## "Carrol C. Wall, Attorney"

The allegations within the attachments to the Complaint about Attorney Wall (whom said attachments label as Plaintiff's "state appointed attorney") consist of the following:

1) "when [Plaintiff] made bail and made [his] court date on January 31, 2011, [Attorney Wall] told the judge that [Attorney Wall] wanted off [Plaintiff's] case . . . [because Attorney Wall] doesn't handle felony cases" (Docket Entry 2 at 16);[14]

2) "[o]bviously [Attorney Wall] knew that the D.A.'s Office was prosecuting [Plaintiff] for the death of [his] dogs without proof" (id.);

---

[13] In addition, the Court should not allow any such Section 1983 claim (as well as any other claim Plaintiff may seek to assert against the "City of Lexington Sheriff Dept." based on the circumstances surrounding the delay in his release on bond) to go forward in this action because of the absence of any common issues of law and fact shared by such a claim and the claims against the "City of Lexington Police Dept." and Officers White, Fritz, and English. See Fed. R. Civ. P. 20(a)(2)(B), 21.

[14] Given other allegations in the Complaint as to the dates of the relevant events (see Docket Entry 2 at 8-10, 14, 15, 18), it appears that the above-referenced court appearance on "January 31, 2011," actually would have occurred in 2012.

3) Plaintiff "requested a speedy trial of [Attorney Wall] and the new appointed attorney" (id.); and

4) Plaintiff is "ready" for trial, but "[his] attorneys [are] waiting for the prosecution to prepare" (id.).

Based on these assertions, the Complaint concludes that Attorney Wall "hindered [Plaintiff's] right to due process" (id.). Given that the allegations in the Complaint reflect that the state court released Attorney Wall from Plaintiff's state criminal case shortly after it began, it does not appear that Plaintiff has any basis to blame Attorney Wall for any delay in the trial of said case. Regardless of that fact, Plaintiff cannot pursue any due process-based claim against Attorney Wall because he does not qualify as a state actor (notwithstanding any court appointment). See Hall v. Quillen, 631 F.2d 1154, 1155-56 (4th Cir. 1980).

### Various Media Entities

In its attached pages, the Complaint alleges that the "News Dispatch of Lexington" printed "[s]landering and defaming articles [that] were written by Darrick Ignasiak on January 15 & 26[,] 2012 . . . ." (Docket Entry 2 at 13.) The Complaint, however, does not identify in any way any factual matter showing any allegedly false and defamatory statements in the referenced articles. (See id. at 13-14.) As such, the Complaint fails to state a defamation claim under North Carolina law, see Tyson, 84 N.C. App. at 10-11, 351 S.E.2d at 840, as judged by the Twombly and Iqbal standard, see

<u>Mayfield v. National Ass'n for Stock Car Auto Racing, Inc.</u>, 674
F.3d 369, 377-78 (4th Cir. 2012) (ruling that defamation claim
could not survive motion to dismiss where complaint contained only
"conclusory allegation — a mere recitation of the legal standard");
<u>Councell v. Homer Laughlin China Co.</u>, 823 F. Supp. 2d 370, 383
(N.D.W. Va. 2011) ("[T]he plaintiffs allege nothing more than broad
legal conclusions that 'inaccuracies' existed in [the] personnel
file and 'scandalous' and 'defamatory' statements were made. . . .
These conclusions are insufficient to support [a defamation claim]
under the <u>Twombly</u> and <u>Iqbal</u> standards . . . ."); <u>Smith v. McGraw</u>,
No. 10CV2310AW, 2011 WL 1599579, at *8 (D. Md. Apr. 27, 2011)
(unpublished) ("In order for the Court to determine whether a
statement is defamatory, it is essential for the plaintiff to
describe the actual statements or conduct that give rise to the
claims.  In reviewing a motion to dismiss, the Court must defer to
the well-pleaded facts in the Complaint, but not to the legal
conclusions or unsupported factual inferences Plaintiff attempts to
draw.  Thus, a defamation complaint must contain more than the
plaintiff's personal conclusion that she was the victim of
defamatory statements." (internal citation omitted)); <u>Skilstorm,
Inc. v. Electronic Data Sys., LLC</u>, 666 F. Supp. 2d 610, 619-20
(E.D. Va. 2009) ("[The plaintiff's] pleading of its defamation
claim is exactly the type of pleading that <u>Iqbal</u> and <u>Twombly</u> sought
to foreclose.  Here, [the plaintiff] alleges that it was defamed by

[the defendant], but [the plaintiff] makes no direct allegations nor pleads any facts that allow the Court to plausibly infer that [the plaintiff] was, in fact, defamed."). Similarly, although the attached pages of the Complaint assert that numerous other media entities "printed slanderous and defamatory information without facts," "aired news releases that were slanderous and detrimental to [Plaintiff's] character," and "aired and released erroneous information that was and is slanderous and detrimental to [Plaintiff's] character & psyche" (Docket Entry 2 at 14, 17, 18), those claims also fall short under <u>Twombly</u> and <u>Iqbal</u> (in light of the above-cited authority), because the Complaint fails even to describe in a general sense any allegedly false and defamatory statements disseminated by such media outlets (<u>see</u> <u>id.</u>).

 <u>"City of Lexington Sanitation Dept." and "Jeff Everhart"</u>

 The attachments to the Complaint offer these allegations about the "City of Lexington Sanitation Dept." and "Jeff Everhart":

 1) "[Plaintiff] worked for this Depart. about 3½ years on a temporary basis . . . [e]very year around October [when] leaf season begans [sic]" (<u>id.</u> at 11);

 2) Plaintiff did "an exceptional job [and] [his] attendance record was impeccable" (<u>id.</u>);

 3) "around Oct 13 or 14 of 2011, [Plaintiff] saw members of the Trash Department, . . . asked them when would leaf season began [sic], [and] they told [Plaintiff] soon" (<u>id.</u> at 11-12);

4) "[Plaintiff] then asked [a member of the Trash Department] to call Jeff Everhart, the supervisor that [Plaintiff] had worked for because [Plaintiff] didn't have his number" (<u>id.</u> at 12);

5) the Trash Department member "dialed the number and [Plaintiff] spoke with [Everhart] . . . [who said] he remember[ed] [Plaintiff]" (<u>id.</u>);

6) "[Plaintiff] told [Everhart] that [Plaintiff] was interested in working the leaf season . . . [and Everhart] said go back to . . . the [temporary employment] agency that his department was registered with . . . and get re-registered, get [a] back-ground check done and that he would hire [Plaintiff]" (<u>id.</u>);

7) after Plaintiff "did that [and] pass[ed] the back-ground check, [he] called [Everhart] to let him know . . . [and Everhart] said he would let [Plaintiff] know when to start" (<u>id.</u>);

8) "[s]everal days later . . . [Plaintiff] called [Everhart] again, only to be told that they were not ready yet" (<u>id.</u>);

9) "[a] week later . . . [Plaintiff] called [Everhart] again and he told [Plaintiff] all positions had been filled" (<u>id.</u>); and

10) "[Plaintiff] felt betrayed and disheartened because reality finally set in, [Plaintiff] knew as a general practice, that Department hired no more than 2 minority [sic] regardless of national origin . . . [and was] convinced that that quote [sic] had been filled" (<u>id.</u>).

Accordingly, it appears that Plaintiff seeks to assert a claim of race-based employment discrimination against the "City of Lexington Sanitation Dept." and a supervisor within said Department. That claim cannot proceed in this action for a number of reasons. First, given that a municipal sanitation department constitutes only a component of a municipality, such a department likely would not qualify as a proper party. See <u>Fields v. Tucker</u>, No. 1:10CV844, 2011 WL 4345306, at *1 n.1 (M.D.N.C. Sept. 15, 2011) (unpublished), <u>recommendation adopted in relevant part</u>, 2012 WL 174820, at *1-2 (M.D.N.C. Jan. 20, 2012) (unpublished); <u>see also</u> <u>Mack</u>, 2008 WL 4832995, at *6 n.4. Second, the instant employment-related, racial discrimination claim fails to present questions of law or fact common to any of the previously-discussed claims. See Fed. R. Civ. P. 20(a)(2)(B) (requiring common issues of law or fact for joinder of defendants), 21 (authorizing courts to sua sponte "drop a party" to address misjoinder). Third, the Complaint lacks any factual allegations that would support an inference that race played any part in Everhart's actions and, instead, relies only on a bald assertion that the "City of Lexington Sanitation Dept." utilizes a racial quota system; as a result, this claim does not pass muster under the <u>Twombly</u> and <u>Iqbal</u> pleading standard.

## CONCLUSION

The Complaint in this case fails to state a viable cause of action against any named Defendant, includes as Defendants entities

not amenable to suit in federal court, purports to join Defendants despite the absence of required common issues of law or fact, and (in at least one instance) pursues a claim precluded by an established immunity doctrine.  Indeed, the Complaint so lacks an arguable basis in law and fact as to qualify as frivolous.

**IT IS THEREFORE ORDERED** that Plaintiff's instant Application for Leave to Proceed In Forma Pauperis (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that this action be **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1915(e)(2), as frivolous, for failing to state a claim, and due to the immunity of a Defendant.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 17, 2012